IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ALBERTA DAVIS, as next of kin and
the Administratrix of the Estate of
KEVIN DAVIS,

      Plaintiff,

v.

JOSEPH ROBERTS PITTS, in his
individual capacity; and ROBERT
PATRICK VAN LEUVEN, in his
individual capacity,

      Defendants.

CIVIL ACTION FILE

NO. 1:17-CV-141-MHC

## ORDER

This action arises from the shooting of Kevin Davis by DeKalb County

Police Officer Joseph Roberts Pitts on December 29, 2014, in DeKalb County,

Georgia, and Davis's death from injuries resulting from that shooting.  This case

comes before the Court on Defendants' Motion to Dismiss Plaintiff's First

Amended Complaint [Doc. 14].

## I.    BACKGROUND

Based on the allegations of Plaintiff's First Amended Complaint, on

December 29, 2014, Officer Pitts was informed by police dispatch that a female

occupant in Apartment E-100 of the Marquis Forest Apartments, 100 Pinetree Circle, Decatur, Georgia (later identified as April Edwards), had been stabbed by a male roommate (later identified as Terrance Hilyard) and was also aware that a male was rendering assistance to her at the scene. Am. Compl. [Doc. 9] ¶¶ 13-16, 88. Officer Pitts arrived at the apartment building, heard loud voices, and approached Apartment E-100 with his police-issued handgun in the "low ready" position. Id. ¶¶ 17-20, 35. As the door to the apartment was closed, Officer Pitts contends he banged on the door several times, announcing that he was with the DeKalb County Police Department; although he heard voices coming from inside the apartment, no one came to the door. Id. ¶¶ 21-26. Officer Pitts then grabbed the handle of the door to the apartment and, finding that it was unlocked, opened the door while continuing to hold his handgun in the "low ready" position. Id. ¶¶ 29-30; 33, 35.

After peeking inside the door and observing "nothing amiss," Officer Pitts opened the door and saw a three-legged pit bull-type dog inside the apartment and moving toward him as Officer Pitts proceeded into the hallway. Id. ¶¶ 36-41. Officer Pitts, concerned that the dog might bite him, then shot the dog several times. Id. ¶¶ 42-44. The wounded dog then entered the bedroom located in the rear of the apartment where Kevin Davis ("Davis") and Ms. Edwards were on the

2

telephone with a 911 operator. Id. ¶¶ 45, 47, 52, 84. Davis, who has been rendering aid to Ms. Edwards, retrieved his revolver after hearing shots fired and observing his wounded dog. Id. ¶¶ 46-47, 56. Davis then proceeded down the hall of the apartment toward the front door to find out who had shot his dog, "as well as to lawfully protect his home." Id. ¶ 47.

Officer Pitts, who still had his revolver in the "low ready" position, engaged "in an exchange" with Davis as to why Officer Pitts shot Davis's dog. Id. ¶¶ 50, 53, 55, 57-58. After approximately six seconds, Officer Pitts noticed Davis had a revolver in his right hand, which was at Davis's side and fully extended toward the floor. Id. ¶¶ 56, 61. According to Plaintiff, Davis never raised his gun from its downward position at Davis's side, never moved toward Officer Pitts in an aggressive manner, and never made a verbal threat to Officer Pitts. Id. ¶¶ 67-69, 76. Officer Pitts fired approximately five shots, which all struck Davis, who dropped his revolver and fell to the floor. Id. ¶¶ 62-65, 70-71. Ms. Edwards came to Davis's aid; she asked Officer Pitts, "Why did you shoot him?" and Officer Pitts responded, "He had a gun." Id. ¶¶ 74-75. Davis was taken by ambulance to Grady Memorial Hospital for treatment of his injuries, which were extensive. Id. ¶¶ 77-81.

The next day, December 30, 2014, DeKalb County Police Detective Robert Patrick Van Leuven swore out a warrant against Davis, charging him with aggravated assault on Officer Pitts, alleging that Davis showed "intent to use a firearm [against a peace officer] after refusing to drop the firearm, that he was holding in his hand when a police officer gave verbal commands for him to do so." Id. ¶ 86-87. According to Plaintiff, at the time he swore out the warrant, Detective Van Leuven knew that Terrance Hilyard had stabbed Ms. Edwards, that Davis had nothing to do with the stabbing and was rendering medical aid to Ms. Edwards when Officer Pitts entered the apartment, and that Davis never raised his gun toward nor verbally threatened Officer Pitts.[1] Id. ¶¶ 88-93. Based upon these and other alleged misrepresentations of Detective Van Leuven, a warrant was issued for Davis's arrest, which resulted in an armed officer being present at Grady Memorial Hospital to guard Davis during his hospitalization. Id. ¶¶ 94-112. This prevented Davis's family from visiting Davis in the hospital. Id. ¶ 113. Davis died on December 31, 2014. Id. ¶¶ 83, 114. The aggravated assault charge against Davis was dismissed on January 5, 2015. Id. ¶ 132.

---

[1] Plaintiff's First Amended Complaint alleges that Officer Pitts admitted that Davis never pointed a gun at him and also alleges that another officer, identified as "Officer Hill," heard Officer Pitts "command someone to drop the gun" but that command may have come after Davis was shot. Am. Compl. ¶¶ 117-118, 124-127.

4

On November 10, 2016, Plaintiff Alberta Davis, as next of kin and

Administratrix of the Estate of Kevin Davis, filed an action in the State Court of

DeKalb County, Georgia, against DeKalb County, Officer Pitts, and Detective Van

Leuven, alleging various claims under state and federal law arising out of the

alleged wrongful death of Kevin Davis. Alberta Davis v. DeKalb Cty., et al., State

Court of DeKalb Cty., Civil Action No. 16A62167 [Doc. 1-1]. Defendants

removed the action to this Court on January 12, 2017. Notice of Removal [Doc.

1]. Since that time, Plaintiff has agreed to dismiss DeKalb County, Georgia, as a

party defendant as well as the malicious prosecution claim against Detective Van

Leuven. Feb. 15, 2017, Order [Doc. 11]; Mar. 21, 2017, Order [Doc. 21].

The following claims are pending against Officer Pitts: (1) state law claims

for (a) conscious pain and suffering from inflicted gunshot wounds (Count I);

(b) wrongful death (Count II); (c) assault and battery (Count III); (d) breach of

duty to protect from the application of excessive force (Count IV); and (e) false

imprisonment (Count V); and (2) a federal law claim for excessive force under 42

U.S.C. § 1983 (Count IX). The following claims remain pending against Detective

Van Leuven: (1) a state law claim for false swearing (Count VI); and (2) federal

law claims for (a) false arrest under 42 U.S.C. § 1983 (Count VII); and (b)

deprivation of Davis's right of free association based upon administrative

5

restrictions while hospitalized (Count X). In addition, Plaintiff seeks punitive damages (Count XI) and attorney's fees (Count XII) against both Officer Davis and Detective Van Leuven.

Defendants move for dismissal of Counts VII, IX, and X based upon qualified immunity, and for dismissal of Counts I-VI based upon official immunity. Mem. of Law in Supp. of Defs.' Mot. to Dismiss [Doc. 14-1] ("Defs.' Br.") at 8-17. Because dismissal of all counts would leave Plaintiff unable to recover punitive damages or attorney's fees, Defendants also move for dismissal of Counts XI and XII. Id. at 17.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Under Federal Rule of Civil Procedure 12(b)(6), a claim will be dismissed for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The Supreme Court has explained this standard as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for

more than a sheer possibility that a defendant has acted unlawfully. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal citation omitted). Thus, a claim will survive a motion to dismiss only if the factual allegations in the pleading are "enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

At the motion to dismiss stage, the court accepts all well-pleaded facts in the plaintiff's complaint as true, as well as all reasonable inferences drawn from those facts. McGinley v. Houston, 361 F.3d 1328, 1330 (11th Cir. 2004); Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). Not only must the court accept the well-pleaded allegations as true, but these allegations must also be construed in the light most favorable to the pleader. Powell v. Thomas, 643 F.3d 1300, 1302 (11th Cir. 2011). However, the court need not accept legal conclusions, nor must it accept as true legal conclusions couched as factual allegations. Iqbal, 556 U.S. at 678. Thus, evaluation of a motion to dismiss requires the court to assume the veracity of well-pleaded factual allegations and "determine whether they plausibly give rise to an entitlement to relief." Id. at 679.

## III.   DISCUSSION

### A.   Whether Defendants Pitts and Van Leuven Are Entitled to Qualified Immunity From Individual Liability as to Counts VII, IX, and X[2]

"Qualified immunity offers complete protection for individual public officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Sherrod v. Johnson, 667 F.3d 1359, 1363 (11th Cir. 2012) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  To claim qualified immunity, a defendant must first show he was performing a discretionary function.  Moreno v. Turner, 572 F. App'x 852, 855 (11th Cir. 2014) (citing Whittier v. Kobayashi, 581 F.3d 1304, 1308 (11th Cir. 2009)).  There is no dispute that Defendants were acting in the scope of their discretionary authority in this case.

"Once discretionary authority is established, the burden then shifts to the plaintiff to show that qualified immunity should not apply." Edwards v. Shanley, 666 F.3d 1289, 1294 (11th Cir. 2012) (quoting Lewis v. City of W. Palm Beach,

---

[2] As Count VIII (malicious prosecution) has been dismissed by Plaintiff, Defendants' motion to dismiss with respect to that count is **DENIED AS MOOT**.

561 F.3d 1288, 1291 (11th Cir. 2009)).  A plaintiff demonstrates that qualified

immunity does not apply by showing: "(1) the defendant violated a constitutional

right, and (2) the right was clearly established at the time of the alleged violation."

Kobayashi, 581 F.3d at 1308.  A constitutional right is clearly established "only if

its contours are 'sufficiently clear that a reasonable official would understand what

he is doing violates that right.'"  Vaughan v. Cox, 343 F.3d 1323, 1332 (11th Cir.

2003) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).  "When we

consider whether the law clearly established the relevant conduct as a

constitutional violation at the time that [the government official] engaged in the

challenged acts, we look for 'fair warning' to officers that the conduct at issue

violated a constitutional right."  Jones v. Fransen, 857 F.3d 843, 851 (11th Cir.

2017) (citing Coffin v. Brandau, 642 F.3d 999, 1013 (11th Cir. 2011) (en banc)).

There are three methods to show that the government official had fair warning:

> First, the plaintiffs may show that a materially similar case has already
> been decided.  Second, the plaintiffs can point to a broader, clearly
> established principle that should control the novel facts of the
> situation.  Finally, the conduct involved in the case may so obviously
> violate the constitution that prior case law is unnecessary.  Under
> controlling law, the plaintiffs must carry their burden by looking to
> the law as interpreted at the time by the United States Supreme Court,
> the Eleventh Circuit, or the [relevant State Supreme Court].

Terrell v. Smith, 668 F.3d 1244, 1255-56 (11th Cir. 2012) (citations, quotation

marks, and alterations omitted).

9

The first method "looks at the relevant case law at the time of the violation; the right is clearly established if 'a concrete factual context [exists] so as to make it obvious to a reasonable government actor that his actions violate federal law.'" Fils v. City of Aventura, 647 F.3d 1272, 1291 (11th Cir. 2011) (alterations in original) (quoting Hadley v. Gutierrez, 526 F.3d 1324, 1333 (11th Cir. 2008)). While the facts of the case need not be identical, "the unlawfulness of the conduct must be apparent from pre-existing law." Coffin, 642 F.3d at 1013; see also Gennusa v. Canova, 748 F.3d 1103, 1113 (11th Cir. 2014) ("We do not always require a case directly on point before concluding that the law is clearly established, but existing precedent must have placed the statutory or constitutional question beyond debate.") (internal quotation marks and citation omitted)).

The second and third methods, known as "obvious clarity" cases, exist when "case law is not needed" to demonstrate the unlawfulness of the conduct or where the existing case law is so obvious that "every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted." Vinyard v. Wilson, 311 F.3d 1340, 1350-51 (11th Cir. 2002); see also Jay v. Hendershott, 579 F. App'x 948, 951 (11th Cir. 2014) ("Under this test, the Court must determine whether application of the excessive-force standard 'would inevitably lead every reasonable officer in [the

defendant's] position to conclude that the force was unlawful.' ") (quoting <u>Priester</u> <u>v. City of Riviera Beach</u>, 208 F.3d 919, 926 (11th Cir. 2000)) (internal quotation marks omitted).  Such cases are rare.  <u>See, e.g.</u>, <u>Santamorena v. Georgia Military</u> <u>College</u>, 147 F.3d 1337, 1340 n.6 (11th Cir. 1998) (noting that "these exceptional cases rarely arise").

This Court applies Defendants' qualified immunity defense to each count separately.

### 1.    Qualified Immunity – Excessive Force

Plaintiff alleges that Officer Pitts shot and killed Davis despite the fact that Davis did not present an imminent threat of bodily harm to Officer Pitts.

> Deadly force is reasonable for the purposes of the Fourth Amendment when an officer (1) has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others or that he has committed a crime involving the infliction or threatened infliction of serious physical harm; (2) reasonably believes that the use of deadly force was necessary to prevent escape; and (3) has given some warning about the possible use of deadly force; if feasible.

<u>Robinson v. Arrugueta</u>, 415 F.3d 1252, 1255 (11th Cir. 2005) (citing <u>Vaughan</u>, 343 F.3d at 1329-30) (quotations omitted).  The reasonableness for the use of force "is dependent on all the circumstances that are relevant in the officer's decision to use deadly force, including the seriousness of the crime, whether the suspect poses an immediate danger to the officer or others, whether the suspect resisted or attempted

11

to evade arrest, and the feasibility of providing a warning before employing deadly force." <u>Jean-Baptiste v. Gutierrez</u>, 627 F.3d 816, 821 (11th Cir. 2010) (citing <u>Penley v. Eslinger</u>, 605 F.3d 843, 850 (11th Cir. 2010)).

Taking the facts as alleged in Plaintiff's First Amended Complaint as true, which this Court must do on a motion to dismiss, the Court cannot conclude as a matter of law that Davis's use of deadly force was justified because Davis never pointed a gun at, verbally threatened, or aggressively moved against Officer Pitts, nor did he fail to relinquish his weapon after being directed to do so. In their brief in support of their motion to dismiss, Defendants assert that Officer Pitts was justified in using deadly force because Davis was holding a gun and Detective Van Leuven swore under oath that Davis refused to drop his weapon after being given a verbal command to do so by Officer Pitts. Defs.' Br. at 13-5. However, Plaintiff asserts that, based upon the statement of another officer and a 911 audiotape, that the verbal command was announced by Officer Pitts only <u>after</u> Davis had been shot. Am. Compl. ¶¶ 124-127. This is a disputed issue of material fact and, at this stage of the litigation, the Court is required to credit Plaintiff's claims as true and not weigh the evidence. It may be that, on summary judgment, there will be undisputed evidence that would lead any reasonable officer to conclude that the use of deadly force was objectively reasonable. <u>See, e.g.</u>, <u>Jean-Baptiste</u>, 627 F.3d

12

at 821-22 (granting summary judgment where the facts established that the police officer reasonably responded with deadly force). At this early stage of the case, based upon the excessive force allegations contained in Plaintiff's Amended Complaint, the defense of qualified immunity as to Officer Pitts is premature.

Because Count IX of the Complaint sufficiently alleges a constitutional violation of the inappropriate use of deadly force, Defendants' qualified immunity defense for Officer Pitts is denied at this time. See Mighty v. Miami-Dade Cty., 659 F. App'x 969, 973 (11th Cir. 2016) ("Our cases have 'establish[ed] that unprovoked force against a non-hostile and non-violent suspect who has not disobeyed instructions violates that suspect's rights under the Fourth Amendment.'") (quoting Fils, 647 F.3d at 1289); Dukes v. Miami-Dade Cty., 232 F. App'x 907, 912-13 (11th Cir. 2007) (denying motion to dismiss based on the qualified immunity defense to police officer who shot the plaintiff where there was a disputed issue of material fact as to whether the use of deadly force was justified and it was inappropriate at the motion to dismiss stage to evaluate those disputes).[3]

---

[3] Williams v. Deal, 659 F. App'x 580 (11th Cir. 2016), cited by Defendants, clearly is inapposite. In Williams, there was undisputed evidence (some captured by a video camera in the police vehicle) that Officer Deal and Williams got into a fist fight during which William's grabbed the Officer Deal's firearm holster; moreover, after Officer Deal displayed his firearm and aimed it at Williams, Williams continued to move toward the officer when the officer shot him. Id. at 586-94. "Officer Deal drawing and aiming his gun plainly served as a nonverbal warning

Therefore, Defendants' motion to dismiss Count IX based on qualified immunity is **DENIED**.

### 2.    Qualified Immunity – False Arrest

Plaintiff asserts that Detective Van Leuven applied for an arrest warrant against Davis knowing that there was neither probable cause nor arguable probable cause for Davis's arrest for aggravated assault against Officer Pitts.  Am. Compl. ¶¶ 87-110, 187-89.  Plaintiff contends that qualified immunity does not protect Detective Van Leuven because he presented "knowingly false, material testimony to the judge who issued the arrest warrant" and it is premature to determine whether arguable probable cause existed for the issuance of the warrant.  Pl.'s Opp'n to Mot. to Dismiss [Doc. 16] at 8-14.

"Law enforcement violates a person's Fourth Amendment rights when it arrests him or her without probable cause, and a claim arises under § 1983." Rushing v. Parker, 599 F.3d 1263, 1265 (11th Cir. 2010).  "Probable cause exists where the facts within the collective knowledge of law enforcement officials, derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being

against approaching the officer; a warning that Mr. Williams disregarded."  Id. at 601.

14

committed." <u>Brown v. City of Huntsville</u>, 608 F.3d 724, 734 (11th Cir. 2010).  To

receive qualified immunity when a plaintiff alleges an arrest in violation of the

Fourth Amendment, an arresting officer must show at least "arguable probable

cause to believe that a person is committing a particular public offense." <u>Redd v.</u>

<u>City of Enterprise</u>, 140 F.3d 1378, 1384 (11th Cir. 1998).  "In wrongful arrest

cases, we have defined the 'clearly-established' prong [for purposes of applying

qualified immunity] as an 'arguable probable cause' inquiry." <u>Moran v. Cameron</u>,

362 F. App'x 88, 93 (11th Cir. 2010).

In her Amended Complaint, Plaintiff alleges that Detective Van Leuven

made deliberately false statements to support the application for an arrest warrant

for Davis on the charge of aggravated assault; in other words, that the warrant was

obtained in bad faith.  Under O.C.G.A. § 17-4-41(a), an arrest warrant shall

include, as near as practicable, the following facts:  (1) "The offense, including the

time, date, place of occurrence, against whom the offense was committed, and a

statement describing the offense; and (2) The county in which the offense was

committed."  A person commits the offense of aggravated assault, in pertinent part,

when he assaults[4]:

---

[4] A person commits an assault when he "(1) [a]ttempts to commit a violent injury
to the person of another; or (2) [c]ommits an act which places another in

15

(1) With intent to murder, to rape, or to rob; [or]

(2) With a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury[.]

O.C.G.A. § 16-5-21(a).

The arrest warrant is not a part of the record in this case, so the Court is unable at this stage to determine whether all of the elements cited above were included in the warrant. Compare Willis v. Arp, 165 F. Supp. 3d 1357, 1362 (N.D. Ga. 2016) ("Plaintiff attached the arrest warrant to his Complaint, so the Court can clearly see that it contains all of these elements."). More importantly, Plaintiff has alleged that Detective Van Leuven falsified the facts when swearing out the arrest warrant for Davis. "[F]alsifying facts to establish probable cause is patently unconstitutional[.]" Kingsland v. City of Miami, 382 F.3d 1220, 1232 (11th Cir. 2004); see also Riley v. City of Montgomery, 104 F.3d 1247, 1253 (11th Cir. 1997) ("It was well established in 1989 that fabricating incriminating evidence violated constitutional rights.") (citation omitted). At this stage of the litigation, the Court is required to presume the truth of the assertions in the Amended Complaint, and there is nothing else in the record to lead the Court to conclude that

---

reasonable apprehension of immediately receiving a violent injury." O.C.G.A. § 16-5-20.

Detective Leuven had arguable probable cause to arrest Davis for aggravated assault.  See Kingsland, 382 F.3d at 1232 ("Without further factfinding, it is impracticable to conclude that arguable probable cause existed for Kingsland's arrest when it is unclear how much of the proffered evidence tending to support a finding of arguable probable cause was manufactured or misrepresented, or what further knowledge, if any, would be attributed to the defendants if they had investigated reasonably.").

Accordingly, Defendant's motion to dismiss Count VII based upon qualified immunity is **DENIED**.

### 3.    Qualified Immunity – Free Association Claim

Plaintiff alleges that Davis's right of free association was violated while he was hospitalized because Detective Van Leuven falsely swore out an arrest warrant,  and this prevented his family from visiting with him prior to his death. Am. Compl. ¶ 113.  Plaintiff argues that qualified immunity would not apply to this claim for the same reasons that it would not apply at this stage of the proceedings to the false arrest claim.  Pl.'s Opp'n at 18.  Defendants' motion does not directly discuss how qualified immunity would apply to bar Plaintiff's free association claim.

17

The resolution of whether qualified immunity would operate to bar Plaintiff's free association claim is dependent upon whether Detective Van Leuven had arguable probable cause to charge Davis with aggravated assault. For the same reasons discussed in subsection (A)(2), above, the Court must accept Plaintiff's factual assertions as true and cannot weigh the evidence at the motion to dismiss stage. Accordingly, Defendant's motion to dismiss Count X based upon qualified immunity is **DENIED**.

### B.   Whether Defendants Pitts and Van Leuven Are Entitled to Official Immunity From Individual Liability as to Counts I-VI

Plaintiff has brought a number of state law claims against Officer Pitts based upon the alleged wrongful death of Davis, including assault and battery, breach of duty, false imprisonment, and pain and suffering. Plaintiff also brings a state law claim against Detective Van Leuven for false swearing. Defendants have moved to dismiss all of these state law claims based on the doctrine of official immunity.

The Georgia Constitution provides that state officers and employees "may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions." GA. CONST., art. I, § 2, ¶ IX(d). The doctrine of official immunity "protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority, and done without wilfulness (sic), malice or corruption."

18

Boatright v. Copeland, 336 Ga. App. 107, 108 (2016) (citation and quotation

omitted).  "Unlike qualified immunity under federal law, we must inquire into [the

public agent's] subjective intent to determine whether he has official immunity

under Georgia law." Jordan v. Mosley, 487 F.3d 1350, 1357 (11th Cir. 2007).

Specifically, a public agent loses the protection of official immunity if the agent

acted with "actual malice or an intent to injure." Cameron v. Lang, 274 Ga. 122,

125 (2001).  "Actual malice" refers to "a deliberate intention to do wrong," which

is more than simply "reckless disregard for the rights or safety of others." Murphy

v. Bajjani, 282 Ga. 197, 203 (2007) (quoting Merrow v. Hawkins, 266 Ga. 390,

391-92 (1996)).

### 1.    Official Immunity – Wrongful Death Claims

"In the context of a shooting by a police officer, the Supreme Court of

Georgia has held that if the officer shot 'intentionally and without justification,

then [he] acted solely with the tortious actual intent to cause injury' and would not

be protected by official immunity." Porter v. Massarelli, 303 Ga. App. 91, 96

(2010) (quoting Kidd v. Coates, 271 Ga. 33, 34 (1999)).  "If, however, the officer

shot 'in self-defense, then [he] has no actual tortious intent to harm.'" Id. (citing

Kidd, 271 Ga. at 34).  Self-defense is defined as "use [of] such force as is

reasonably believed to be necessary to prevent death or great bodily injury to themselves or the commission of a forcible felony." Id.

As previously discussed, Plaintiff alleges facts which call into question whether Officer Pitts's action in shooting Davis was justified.[5] Viewing the evidence in the light most favorable to Plaintiff, this Court concludes that Officer Pitts is not entitled to official immunity at this stage of the litigation.

Therefore, Defendants' motion to dismiss Counts I-V of the Amended Complaint is **DENIED**.

### 2.    Official Immunity – False Swearing

Plaintiff brings a state law claims against Detective Van Leuven for his alleged violation of O.C.G.A. § 16-10-71(a) when he swore out a warrant for Davis's arrest for aggravated assault knowing that the facts did not support such an arrest. O.C.G.A. § 16-10-71(a) creates the criminal offense of "false swearing" when, in any matter or thing other than a judicial proceeding, a person "to whom a lawful oath or affirmation has been administered or who executes a document knowing that it purports to be an acknowldgement of a lawful oath or affirmation,"

---

[5] Defendants again assert that "[i]t is undisputed that, when Mr. Davis first engaged with Officer Pitts, Mr. Davis was carrying a gun and that a command was given for Mr. Davis to drop his weapon." Defs.' Br. at 16. However, whether Officer Pitts gave that command before or after Davis was shot is disputed at this stage.

knowingly and willfully makes a false statement.  This Court does not have to determine whether Detective Van Leuven's defense of qualified immunity applies to this claim because there is no civil cause of action for a violation of O.C.G.A. § 16-10-71(a).  Commercial Plastics & Supply Corp. of Ga. v. Molen, 182 Ga. App. 202, 204 (1987).  Consequently, Defendants' motion to dismiss Count VI of the Amended Complaint is **GRANTED**.[6]

## IV.    CONCLUSION

Based on the foregoing, it is hereby **ORDERED** that Defendants' Motion to Dismiss [Doc. 14] is **GRANTED IN PART and DENIED IN PART**.  The motion is **GRANTED** as to Count VI of the Amended Complaint (false swearing against Defendant Van Leuven), **DENIED AS MOOT** as to Count VIII of the Amended Complaint (malicious prosecution against Defendant Van Leuven), and **DENIED** as to all other counts.

**IT IS SO ORDERED** this _6th_ day of November, 2017.

MARK H. COHEN
United States District Judge

---

[6] Because there are substantive claims remaining in this case, Defendants' motion to dismiss with respect to Counts XI (damages) and XII (attorney's fees) is **DENIED**.